AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 1:21-mj-765 |
| MARCUS HAWKINS | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/01/2020_____ in the county of _____Hamilton_____ in the _____Southern_____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1014 | False Statements in Loan and Credit Applications |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ferron M. Yi, SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Oct 22, 2021**

_____
Karen L. Litkovitz
**United States Magistrate Judge**

City and state: CINCINNATI, OHIO

<u>**AFFIDAVIT IN SUPPORT OF CRIMININAL COMPLAINT**</u>

I, Ferron M. Yi, being first duly sworn, hereby depose and state as follows:

**I. INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation (hereafter "FBI"), and have been since February 2020. I am currently assigned to the Complex Financial Crimes Squad of the Cincinnati Division. In this capacity, I investigate matters involving criminal enterprises, white collar crimes, civil rights violations, money laundering, and various types of fraud. Prior to my employment with the FBI, I served as a sworn peace officer in the State of Georgia for over 10 years. I have received training and investigative experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, electronic media and computer investigations, and various other crimes and investigative techniques.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. Consequently, I am an "investigative or law enforcement officer of the United States," within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. I am familiar with the facts and circumstances of this case. The information contained in this affidavit is either personally known to me, based upon my interview of various witnesses and review of various records and publicly available information, or has been relayed to me by other agents or sworn law enforcement personnel. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not

included each and every fact known to me concerning the investigation. I have only set forth

facts to establish probable cause for the charges in the complaint.

    4.    Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C.

§ 1014 (False Statements in Loan and Credit Applications), among other offenses have been

committed by Marcus Hawkins.

## II. PROBABLE CAUSE

### A. The government is investigating fraud involving loan programs designed to assist small businesses during the pandemic.

    5.    In approximately January 2021, the FBI initiated an investigation of Marcus

Hawkins (date of birth XX/XX/1988) (hereafter "Hawkins"), the purported owner of Road

Runner Development LLC, and DSR Studios for suspected violations of 18 U.S.C. § 1341 (Mail

Fraud) and 18 U.S.C. § 1343 (Wire Fraud) related to a large fraud scheme targeting the Ohio

Pandemic Unemployment Assistance (hereafter "PUA") program. During this investigation, a

review of transactional data associated with Hawkins revealed that deposits stemming from

Small Business Administration (hereafter "SBA") programs designed to assist small businesses

and their employees during the coronavirus (hereafter "COVID-19") pandemic had been used for

purchases and expenses seemingly unrelated to job retention and other permissible business

expenses. Specifically, your affiant learned that Hawkins had applied for several Economic

Injury Disaster Loans (hereafter "EIDLs") and in connection with those applications requested

several advance grants (hereafter "EIDGs"). In total, Hawkins applied for at least 3 EIDLs and

successfully received at least 1 EIDL and at least two EIDGs.

    6.    The EIDL program, which is administered by the SBA pursuant to the Small

Business Act, provides economic relief to small businesses and nonprofit organizations that have

suffered damage because of a disaster. As expanded under the Coronavirus Aid, Relief and

Economic Security ("CARES") Act, businesses that are currently experiencing a temporary loss

of revenue due to the COVID-19 pandemic can receive an EIDL for working capital and normal

operating expenses such as continuation of health care benefits, rent, utilities, and fixed debt

payments. The amount of EIDL funds a business may receive is generally determined by the

gross revenues earned in the year before the pandemic.

7.     As part of the EIDL loan application, small businesses can request an EIDG of up

to $10,000.00. The EIDG is designed to provide emergency economic relief to businesses that

are experiencing a loss of revenue by providing funds rapidly. The amount of EIDG funds a

business can receive is determined by the number of employees claimed. Unlike EIDLs, EIDG

proceeds do not need to be repaid.

8.     Under program rules, EIDL and EIDG proceeds cannot be used for disbursements

of dividends or bonuses or any disbursements to owners, partners, officers, directors, or

stockholders, except when directly related to performance of services for the benefit of the

company. EIDL and EIDG proceeds also cannot be used to expand facilities or acquire fixed

assets.

**B. Hawkins' EIDL applications for Road Runner Development LLC and DSR Studios
contain discrepancies indicative of fraud.**

9.     According to the SBA loan file, on or about July 1, 2020, Hawkins applied for an

EIDL (SBA application number 3308036136) and listed "Road Runner Development LLC" as

the company legal name, "Road Runner Development" as the company DBA, and "limited

liability company" as the entity type. In the application, Hawkins used Federal Tax Identification

Number 82-5090266 and indicated that he was 100 percent owner with one employee. Hawkins

claimed that his gross revenues for the 12 months prior to the COVID-19 disaster was

$100,000.00, his primary business address was 24 Landy Lane, Cincinnati, Ohio 45215, and that

this business was in existence since January 1, 2018. Also according to the SBA loan file, on or

about July 2, 2020, an advance for $1,000.00 was successfully funded to Hawkins and on July

17, 2020, an EIDL for $49,000.00 was successfully funded to Hawkins. Bank records show that

on or about July 6, 2020, Hawkins received a deposit in the amount of $1,000.00 from SBAD

TREAS 310 MISC PAY and on or about July 20, 2020, Hawkins received a deposit in the

amount of $48,900.00 from SBAD TREAS 310 MISC PAY in his Huntington Bank account

x8851.

      10.     According to the SBA Loan File, the following day on or about July 2, 2020,

Hawkins applied for yet another EIDL (SBA application number 3308221350), this time for the

company "Marcus Hawkins," with a company DBA "DSR Studio" which he claimed the entity

type to be a sole proprietorship. On this application, Hawkins indicated that he was 100 percent

owner with 10 employees, and used Federal Tax Identification Number 27-0908031. Hawkins

also listed this business address as 24 Landy Lane, Cincinnati, Ohio 45041. Hawkins additionally

claimed that his gross revenues for the 12 months prior to the COVID-19 disaster was

$124,000.00, that the cost of goods sold for the 12 months prior to the disaster was $4,000.00,

and that this business had been in existence since April 1, 2019. On or about July 2, 2020, the

SBA approved an EIDL advance of $10,000.00 and disbursed the advance on July 6, 2020;

however, on July 17, 2020, the SBA flagged that the application may be related to EIDL fraud

due to Hawkins claiming 10 employees on the loan application with no correlating Employee

Identification Number (hereafter "EIN"). Bank records confirmed that on or about July 7, 2020,

Hawkins received a deposit in the amount of $10,000.00 from SBAD TREAS 310 MISC PAY in

his personal Huntington Bank account x8201.

11.     According to the SBA loan file, on July 18, 2020, Hawkins applied for yet another EIDL (SBA application number 3311252768), again for the company "Marcus Hawkins," with a company DBA "DSR Studios" which he claimed the entity type to be a sole proprietorship. On this application, Hawkins indicated that he was 100 percent owner with five employees, and used Federal Tax Identification Number 27-0908031. Hawkins also listed this business address as 24 Landy Lane, Cincinnati, Ohio 45041. Hawkins additionally claimed that his gross revenues for the 12 months prior to the COVID-19 disaster was $113,000.00, that the cost of goods sold for the 12 months prior to the disaster was $1,250.00, and that this business had been in existence since August 19, 2019. The SBA did not fund this loan and flagged it as a duplicate.

12.     The following chart illustrates the loans described above:

| Date | Application Number/ Loan | Applicant/ Date of Creation | Entity | Entity Address | Tax ID used Secretary of State Registration | Gross Revenues/ Industry Claimed Employees Claimed | Amount Received |
|---|---|---|---|---|---|---|---|
| 7/1/2020 | 3308036136 EIDL | Marcus Hawkins 1/1/2018 | Road Runner Development LLC | 24 Landy Lane, Cincinnati, Ohio 45215 | TIN 82-5090266 SoS 3/1/2018 | $100,000.00/ Transportation 1 employee | $49,000.00 +$1,000.00 (advance) |
| 7/2/2020 | 3308221350 EIDL | Marcus Hawkins 4/1/2019 | Marcus Hawkins DBA DSR Studio | 24 Landy Lane, Cincinnati, Ohio 45215 | TIN 27-0908031 SoS N/A | $124,000.00/ Agriculture 10 employees | $10,000.00 (advance) |
| 7/18/2020 | 3311252768 EIDL | Marcus Hawkins 8/19/2019 | Marcus Hawkins DBA DSR Studios | 24 Landy Lane, Cincinnati, Ohio 45215 | TIN 27-0908031 SoS N/A | $113,000.00/ Entertainment Services 5 employees | Not funded |

13.     Comparing the EIDL applications for Marcus Hawkins DBA DSR Studio, I noticed significant differences in gross revenue claimed over the last 12 months as well as differences in claimed number of employees and date of creation. There were also differences in the industry/business category that was listed on the applications and the claimed cost of goods

sold for the 12 months prior to the disaster. Based on my training, knowledge, and experience I know that inconsistencies between loan applications are a common indicator of fraud. SBA notes also suggest that duplicate applications for Marcus Hawkins DBA DSR Studios were declined on July 13, 2020, and August 4, 2020.[1] Based on my experience with these investigations, the number of applications filed by Hawkins is highly indicative of fraud.

14. An open record review by your affiant of "DSR Studio" or "DSR Studios" by both the business name and agent/registrant name on the State of Ohio Secretary of State's website yielded no results. Your affiant confirmed that registration of "Domestic Limited Liability Company" for business "RRD (Road Runner Development) LLC" had been filed by Hawkins to the State of Ohio Secretary of State and effective on March 1, 2018. Road Runner Development LLC has a Post Office Box listed as the address for the business; however, on his EIDL application, Hawkins lists "24 Landy Lane, Cincinnati, Ohio 45215" as the business address.

15. When FBI agents conducted spot checks on 24 Landy Lane, Cincinnati, Ohio 45215, there was no indication that a business named Road Runner Development LLC or DSR Studios existed at this location. It also did not appear that employees were working at this location. There were no visible business signs or advertisements at the physical location, and no online presence or marketing for these businesses were found. Further, through various investigative means, FBI agents learned that Hawkins likely used this location as his primary residence and did not operate a business out of this location, nor did he have any legitimate paid employees.

---

[1] Requests for these records are outstanding.

### C. Evidence suggests that Hawkins used SBA proceeds for Road Runner Development LLC and DSR Studios for expenditures contrary to SBA program rules.

16.     Review of Hawkins's associated Huntington Bank account ending in x8851 records show a series of transactions that do not appear consistent with program rules. Significantly, Hawkins appears to have used EIDL proceeds for personal travel and personal spending. It also appeared that Hawkins transferred some funds from his Huntington Bank account x8851 to his personal Huntington Bank account x8201 and used that personal account to transfer funds into a "Robinhood[2]" investment account. Hawkins made the following withdrawals or debits using his account x8851 which appear consistent with personal, rather than business expenditures, including purchases at various hotels and restaurants in various states, purchases at various luxury department and retail stores, and purchases for car rentals including exotic car rentals:

      a.   $108.18 on July 22, 2020 to Livinn Hotels-Sharonville;

      b.   $102.35 on July 24, 2020 to Livinn Hotels-Sharonville;

      c.   $102.35 on July 27, 2020 to Livinn Hotels-Sharonville;

      d.   $2,500.00 on July 29, 2020 to CashApp – Ohio Road Runner

      e.   $759.70 on August 17, 2020 to Louis Vuitton

      f.   $770.19 on August 24, 2020 to Rent-A-Car Kentucky

      g.   $394.77 on August 27, 2020 to Advance Auto

      h.   $278.00 on August 28, 2020 to ALG AIR[3]

      i.   $322.60 on August 31, 2020 to American (presumably American Airlines)

      j.   $35.00 on August 31, 2020 to American (presumably American Airlines)

---

[2] Robinhood is an American financial services company known for commission-free trades of stocks and exchange-traded funds via a mobile app introduced in March 2015.
[3] ALG AIR stands for Allegiant Air, which is an airline.

k.  $322.60.00 on August 31, 2020 to American (presumably American Airlines)

l.  $598.20 on September 20, 2020 to Delta

m.  $2,912.66 on September 11, 2020 to Rent-A-Car

n.  $70.00 on September 11, 2020 to Delta

o.  $292.09 on September 30, 2020 to Shore Hotel in Santa Monica, CA

p.  $245.00 on October 7, 2020 to Keystone Automotive

q.  $298.10 on October 30, 2020 to Delta

r.  $274.91 on November 2, 2020 to Aloft[4]

s.  $210.67 on November 2, 2020 to Aloft

t.  $30.00 on November 2, 2020 to Delta

u.  $360.86 on November 2, 2020 to Lee's Discount Liquors

v.  $216.74 on November 2, 2020 to Lee's Discount Liquors

w.  $212.31 on November 2, 2020 to Store 20 Las Vegas, NV

x.  $1,000.00 on November 2, 2020 to Gucci 36 Las Vegas, NV

y.  $1,912.49 on November 2, 2020 to Crave Restaurant Las Vegas, NV

z.  $1,040.26 on November 5, 2020 to Chrome Hearts Mailbu in Malibu, CA

aa.  $322.60 on November 6, 2020 to American (presumably American Airlines)

bb.  $130.31 on November 6, 2020 to Peerspace, Inc. in CA

cc.  $100.00 on November 6, 2020 to American (presumably American Airlines)

dd.  $241.00 on November 9, 2020 to ALG AIR

ee.  $270.00 on November 9, 2020 to ALG AIR

ff.  $100.21 on November 10, 2020 to Hotwire Sales in CA

---

[4] Aloft advertises themselves as hotels that cater to today's modern travelers who crave jet-setting styles and vibrant social scenes.

gg. $89.00 on November 12, 2020 to United (presumably United Airlines)

hh. $298.50 on November 16, 2020 to Wayfair in CA

ii.  $1,300.25 on November 16, 2020 to Budget Car and Truck in Las Vegas, NV

jj.  $252.60 on November 17, 2020 to Delta

kk. $126.37 on November 18, 2020 to Caesars Hotel and Casino in Las Vegas, NV

ll.  $88.44 on November 24, 2020 to Mirage Hotel and Casino in Las Vegas, NV

mm.      $98.44 on November 24, 2020 to Mirage Hotel and Casino in Las Vegas

nn. $391.41 on January 4, 2021 to Hyatt in Atlanta, GA

oo. $317.97 on January 4, 2021 to Hyatt in Atlanta, GA

pp. $2,047.77 on January 6, 2021 to Rent-A-Car

qq. $225.00 on February 1, 2021 to ALG AIR

rr.  $224.00 on February 1, 2021 to ALG AIR

ss.  $1,089.13 on March 16, 2021 to Rent-A-Car in Los Angeles, CA

tt.  $1,931.45 on April 7, 2021 to Rent-A-Car in Erlanger, KY

uu. $571.14 on April 9, 2021 to Tickets*Flight Network in Miami, FL

vv. $2,030.34 on April 23, 2021 to Rent-A-Car in Los Angeles, CA

ww.      $2,601.42 on April 26, 2021 to Exotic Car Rental in Los Angeles, CA

xx. $1,000.00 on July 1, 2021 (transfer to personal account x8201)

yy. $2,000.00 on July 2, 2021 (transfer to personal account x8201)

zz. $1,000.00 on July 23, 2021 (transfer to personal account x8201)

17.    Review of Hawkins' associated Huntington Bank personal account ending in
x8201 where he received the $10,000.00 EIDG on July 7, 2020, also show a series of
transactions that do not appear consistent with program rules. Prior to Hawkins receiving the

EIDG, his account balance was minimal. Within approximately a month of receiving the EIDG, he spent all $10,000 of EIDG proceeds on personal expenditures, to include personal travel.

**D.  In addition to the EIDL and EIDGs, Hawkins also applied for and received unemployment assistance.**

18.     Records from the Ohio Department of Job and Family Services (hereafter "ODJFS") also show that from May 2020 to October 2020, Hawkins received approximately $12,542.00 in deposits from the ODJFS- PUA program. ODJFS-PUA payments were authorized under the CARES Act to provide unemployment benefits to support business owners, the self-employed, independent contractors, and others who do not qualify for traditional unemployment benefits. In order to receive ODJFS-PUA, Hawkins was required to submit an application and claim unemployment on a weekly basis online. A review of Hawkins personal Huntington Bank account ending in x8201 confirmed that he received disbursements from "ODJFS-PUA FEDERAL" from approximately May 2020 through October 2020.

19.     Based on my training, knowledge, and experience, I know it is rare for a business owner that has received funds for businesses large enough to justify SBA EIDLs to simultaneously receive unemployment credits under the ODJFS-PUA program. Based on the investigation to date, it appears that in addition to the false statements Hawkins made to the SBA, he made numerous false statements in the application for ODJFS-PUA benefits. Specifically, in Hawkins' PUA Benefit Application, he claimed that his primary employment was "artists and related workers" and had been for one year. Hawkins additionally claimed that his place of employment was closed as a direct result of the COVID-19 public health emergency and that the pandemic caused him to become unemployed because the business was not considered essential. Hawkins also claimed $0.00 on all wage information including 1040A for

the tax year, business income or loss, and Schedule E (Partnership and S Corporation) income or loss. These statements appear to contradict the representations Hawkins made to the SBA.

20. Further, your affiant learned that Hawkins' social media accounts contain recent images and/or videos of him in possession of large amounts of cash as well as recent images and/or videos of him purchasing and wearing expensive jewelry, to include a watch with an estimated value of $60,000.00, a necklace with an estimated value of $65,000.00, and other similar high dollar value jewelry. Based on my training, knowledge, and experience, this is highly indicative of fraud.

### III. CONCLUSION

21. Based on the foregoing, I request that the Court issue the proposed criminal complaint. There is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1014 (False Statements in Loan and Credit Applications) among other offenses, have been committed by Marcus Hawkins. I, therefore, respectfully request that an arrest warrant be issued authorizing the arrest of Marcus Hawkins.

Respectfully submitted,

_____
Ferron M. Yi
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this __22nd__ day of October, 2021.

_____
Karen L. Litkovitz
**United States Magistrate Judge**